**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CYNTHIA CHEVALIER, DEBORAH GRAY,**
**HAROLD GRAY, and DARCY DEGEORGIA,**

                                 **Plaintiffs,**


                  **v.**                                          **1:10-CV-446**
                                                                   **(FJS/DRH)**

**CIVIL SERVICE EMPLOYEES ASSOCIATION,**
**INC.,**

                                 **Defendant.**
_____

**APPEARANCES**                              **OF COUNSEL**

**TOWNE, RYAN & PARTNERS, P.C.**             **ELENA DEFIO KEAN, ESQ.**
450 New Karner Road                          **JAMES T. TOWNE, JR., ESQ.**
Albany, New York 12205-3898
Attorneys for Plaintiffs

**CIVIL SERVICE EMPLOYEES**                  **TIMOTHY CONNICK, ESQ.**
**ASSOCIATION, INC.**
143 Washington Avenue
P.O. Box 7125, Capitol Station
Albany, New York 12224
Attorneys for Defendant

**SCULLIN, Senior Judge**

                    **MEMORANDUM-DECISION AND ORDER**

                          **I. INTRODUCTION**

      Currently before the Court is Plaintiffs' motion for a preliminary injunction[1] ordering

Defendant to (1) restore Plaintiffs to their elected positions within the Civil Service Employees'

Union Local 847 ("Local 847") and the Schenectady County Community College Unit ("SCCC

---

      [1] On April 20, 2010, the Court denied Plaintiffs' motion insofar as Plaintiffs were seeking
a temporary restraining order.

Unit"), (2) restrain from taking any further action that usurps the decision making authority of

the union members and restrain from discriminating based upon these members' exercise of free

speech, and (3) reinstate Plaintiffs and allow them to benefit from their membership in the union

and remove the unauthorized Trusteeship/Administratorship. *See* Dkt. No. 5-7 at 1.[2]  Also

before the Court is Defendant's cross-motion to dismiss or, in the alternative, for summary

judgment. *See* Dkt. No. 7-7.


## II. BACKGROUND

Plaintiffs are all former members of Defendant.  Plaintiff Cynthia Chevalier served as

Treasurer for Local 847 – a local branch of Defendant serving the greater Schenectady area – for

nearly ten years. *See* Complaint at ¶ 5; *see also* Affidavit of Cynthia Chevalier sworn to April 8,

2010 ("Chevalier Aff."), at ¶ 3.  Plaintiff Deborah Gray served as Local 847's Secretary, and

Plaintiff Harold Gray served as its First Vice President during the relevant time period. *See*

Complaint at ¶¶ 6-7.  Plaintiff Darcy DeGeorgia served as the Unit President for the SCCC Unit

during the relevant time period. *See id.* at ¶ 8.

Plaintiffs were long-standing critics of both the Schenectady City School District Unit's

("SCSD Unit") President ,Steven Raucci and Local 847's President, Joanne DeSarbo. *See id.* at

¶ 11.  Plaintiffs Deborah Gray, Harold Gray and Chevalier met with CSEA Region 4 President,

---

[2] In their reply, Plaintiffs modify their request for injunctive relief in light of the fact that
Local 847 has now been dissolved and reformed as Local 885.  Specifically, Plaintiffs are now
"only seeking to enjoin elections for the newly created CSEA Local 885 and its subordinate units
to which [Plaintiffs] would ordinarily belong pending a judicial resolution of their complaint and
are not seeking to restore themselves to their previous positions within CSEA Local 847 at this
juncture." *See* Dkt. No. 9-2 at 1.

Kathleen Garrison, on at least six separate occasions between 2000 and March 2009, during which "Plaintiffs had vociferously objected [to] Ms. DeSarbo's use of Local 847 resources for her own personal benefit."  *See id.* at ¶ 12.  Moreover, during these meetings, Plaintiffs also "objected to Steven Raucci's dual role as an upper-level manager for the Schenectady City School District, while simultaneously holding a 'straw' civil service title of Head Utility Worker."  *See id.* at ¶ 13.  Plaintiffs' objections became even more strenuous when Mr. Raucci began using his position as President of the SCSD Unit for his own personal benefit and to the Unit's members' detriment.  *See id.* at ¶ 14.

For example, Plaintiffs informed Ms. Garrison that Mr. Raucci would use threats, intimidation and actual violence to dissuade SCSD Unit Members from complaining about his "leadership techniques."  *See id.* at ¶ 15.  Plaintiffs complained that this conduct included refusing to process grievances on behalf of SCSD Unit members, threatening to physically harm members and their families for questioning his authority, conspiring with school officials to restrain the collective bargaining rights of SCSD Unit members, and forcing SCSD Unit members to vote for certain candidates for office within the CSEA hierarchy.  *See id.* at ¶ 16.

Moreover, Plaintiffs allege that Ms. Garrison sought Mr. Raucci's and Ms. DeSarbo's assistance in running for re-election as the CSEA Region 4 President in 2008.  *See id.* at ¶ 17.  Mr. Raucci forced the SCSD Unit's members to vote for Ms. Garrison; and, in return for that support, Ms. Garrison took steps to silence Plaintiffs' criticisms of Mr. Raucci and Ms. DeSarbo.  *See id.* at ¶¶ 18-20.  For example, Ms. Garrison introduced a motion at CSEA's Statewide Committee in July 2008 to disqualify Plaintiff Harold Gray from holding elected office within the CSEA.  *See id.* at ¶ 21.  Plaintiffs allege that the purpose of this application was to silence

-3-

Plaintiffs' dissension as to Local 847's leadership.  *See id.* at ¶ 22.

Beginning in 2007, Plaintiff Deborah Gray assisted the New York State Organized Crime Task Force that had formed to investigate Local 847 and Mr. Raucci.  *See* Affidavit of Deborah Gray sworn to April 8, 2010 ("Deborah Gray Aff."), at ¶ 32; *see also* Complaint at ¶ 29.  On February 20, 2009, Mr. Raucci was arrested.  *See* Deborah Gray Aff. at ¶ 34.

On February 23, 2009, Plaintiffs were notified that Local 847 was being placed in Trusteeship because of Mr. Raucci's arrest.  *See id.* at ¶ 33.  Plaintiffs opposed forming the Trusteeship because they believed that it was inconsistent with the remedy needed for Local 847, and it failed to address the fact that money was missing from one of Local 847's subunits.  *See id.* at ¶ 35.  Moreover, Plaintiffs contended that the Trusteeship was simply a means for Defendant to entrench a slate of its own candidates "while wiping previous officials . . . out of office."  *See id.* at ¶ 36.  For example, Plaintiffs asserted that, out of the eight (8) units placed in Trusteeship, they were the only ones precluded from continuing to represent their unit's members.  *See id.* at ¶ 37.  Local President Joanne DeSarbo, however, was afforded the opportunity to continue operating in her *de facto* role, notwithstanding the Trusteeship and despite the fact that both Plaintiffs and the New York State Organized Crime Task Force had raised serious concerns about missing Department of Social Services ("DSS") Unit funds.  *See* Complaint at ¶¶ 27-29.  In the SCC Unit, however, Plaintiffs Deborah Gray and DeGeorgia were replaced in their representative capacities by the two individuals whom they had defeated in the previous election.  *See id.* at ¶ 30.

Nearly six months after the Trusteeship was created, Plaintiffs Deborah Gray, Harold Gray and Chevalier were served with internal disciplinary charges that alleged irregularities

-4-

found when Local 847 was audited.  *See* Complaint at ¶ 33.  The alleged irregularities included an allegation that they provided advance payment for travel expenses without first securing a promissory note from the paid officers and that Local 847's Officers' salaries were "grossed-up."[3] *See id.* at ¶¶ 34-35.  Plaintiffs claim that the Local's Executive Committee, Special Budget Committee and the CSEA had approved this "grossing-up" methodology for nearly ten-years and that this method was specifically disclosed in all of the Local's accounting forms and submitted to Defendant for approval.  *See id.* at ¶ 38.

Plaintiffs assert that they opposed these charges with "voluminous evidence" and established that the practice of grossing-up violated no CSEA rule or regulation.  *See* Deborah Gray Aff. at ¶ 54.  Plaintiffs allege that the hearing that Defendant afforded them was a sham; and, in fact, one of Defendant's staff attorneys represented the "independent" judicial board, as well as Defendant's sole witness against them.  *See* Complaint at ¶ 39.  After finding Plaintiffs Deborah Gray, Harold Gray and Chevalier guilty of misconduct, "they were ordered to kick-back their wages to the Union and accept a suspension from holding elective office or be expelled." *See id.* at ¶ 40.  Plaintiffs administratively appealed the decision, but the CSEA expelled them without completing the appeals process.  *See id.* at ¶ 41.  Moreover, Defendant immediately cancelled Plaintiff Deborah Gray's life insurance and disability policies, which she had received as a benefit of membership.  *See id.* at ¶ 42.  At the time that Defendant cancelled her policies, Plaintiff Deborah Gray was in the process of applying for disability benefits.  *See id.* at ¶ 43.

On April 15, 2010, Plaintiffs filed their complaint asserting four causes of action under

_____

[3] "Grossing-up," in this context, refers to a method of paying the officer's salary "without regard to taxes and allowing each officer an opportunity to withhold up to an additional $200 per month thus increasing their salaries."  *See* Complaint at ¶ 37.

-5-

the Labor-Management Reporting and Disclosure Act ("LMRDA") and one supplemental state-law cause of action.  Specifically, Plaintiffs alleged (1) free speech retaliation in violation of 29 U.S.C. § 411(a)(2); (2) denial of equal rights and privileges of membership in violation of 29 U.S.C. § 411(a)(1); (3) denial of the right to a basic fair hearing in violation of 29 U.S.C. § 411(a)(5); (4) imposition of an illegal Trusteeship in violation of 29 U.S.C. § 462; and (5) a violation of New York Labor Law § 215.  *See id.* at 44-65.

## III. DISCUSSION

**A.   Plaintiffs' motion for a preliminary injunction**

### *1. Standard*

"The district court has wide discretion in determining whether to grant a preliminary injunction[.]"  *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 511 (2d Cir. 2005 (citations omitted).  It is well-settled that "[a] 'party seeking a preliminary injunction must demonstrate '(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.'"  *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004) (quoting *Merkos L'inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002)).  However, where the moving party requests a "mandatory" preliminary injunction – that is, one that alters the status quo by commanding some positive act, as opposed to just maintaining the status quo – or if the injunction will provide the moving party with "'substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits,'"

-6-

the moving party "must satisfy a higher standard, by showing a clear or substantial likelihood of success[.]" *Bose Corp. v. Silonsonnic Corp.*, 413 F. Supp. 2d 339, 341 (S.D.N.Y. 2006) (quoting *Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995)) (other citation omitted).

Although initially requesting a mandatory preliminary injunction, Plaintiffs have altered their request and now only seek to enjoin the elections of the newly formed CSEA Local 885 and its subordinate units, to which Plaintiffs allege that they would belong but for Defendant's actions.  *See* Dkt. No. 9-2 at 1.  As such, Plaintiffs are merely seeking to maintain the status quo and do not need to satisfy the higher standard of "clear or substantial likelihood of success."

### 2. Irreparable harm

Defendant asserts that Plaintiffs cannot show irreparable harm because, even though Plaintiffs are barred from union membership, which includes not being eligible to vote in union elections, if Plaintiffs succeed, the Court can void the existing election and order that a new election be held.  *See* Dkt. No. 7-7 at 18.

"In the Second Circuit, '[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.'" *Smith v. Bowers*, 337 F. Supp. 2d 576, 591-92 (S.D.N.Y. 2004) (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1983))).

In *Bernard v. Local 100, Transp. Workers Union of Am.*, 873 F. Supp. 824 (S.D.N.Y.

1995), the plaintiffs, members of a union, sought to enjoin an upcoming union election because, although one of the plaintiffs was nominated to run in the election, he was kept off of the ballot because he did not attend the minimum number of union meetings during the prior year to be eligible to run for office pursuant to the union's rules. *See id.* at 825. Denying the injunction, the court held that the plaintiffs had not demonstrated that they would be irreparably harmed if the election proceeded because, if they eventually prevailed on the merits of their claim, the court could require the union to hold another election. *See id.* at 827; *see also Fodera v. Local 813 Int'l Bhd. of Teamsters*, No. 05 CV 2489, 2005 WL 2175887, *2 (E.D.N.Y. Sept. 8, 2005) (denying the plaintiff's motion for a preliminary injunction where the plaintiff, a former union member, alleged that he would suffer irreparable harm if he were not allowed "to participate in meetings, to vote for the election of officers and otherwise to participate in union affairs").

In the present matter, Plaintiffs assert that they will suffer irreparable injury if Defendant is permitted to hold elections in the newly created Local 885, of which Plaintiffs believe they would be members if it were not for Defendant's actions. *See* Dkt. No. 9-2 at 6. As in *Bernard*, Plaintiffs fail to explain why, if they are ultimately successful, the Court could not fashion a remedy that would void the elections and allow them to exercise their membership rights. Moreover, Plaintiffs fail to allege the date on which these elections are to take place and, therefore, it is unclear whether or not the Court would be able to determine the merits of Plaintiffs' claims prior to the elections without the need for this extraordinary relief. *See Bernard*, 873 F. Supp. at 827.

Based on the foregoing, the Court finds that Plaintiffs have failed to establish irreparable

harm and denies their motion for a preliminary injunction.[4]


**B.     Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure[5]**

*1. Standard of review*

A motion to dismiss for failure to state a claim brought pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See*

*Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (quotation omitted).  In considering the legal

sufficiency, a court must accept as true all well-pleaded facts in the complaint and draw all

reasonable inferences in the plaintiff's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493

F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not

extend to legal conclusions.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (citation

omitted).  Although a court's review of a motion to dismiss is generally limited to the facts

presented in the pleading, the court may consider documents that are "integral" to that pleading,

even if they are neither physically attached to, nor incorporated by reference into, the pleading.

*See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time*

---

[4] Since Plaintiffs failed to establish irreparable harm, the Court does not need to address the likelihood of success on the merits.  *See Dorsett v. County of Nassau*, ___ F. Supp. 2d ___, 2011 WL 130324, *26 (E.D.N.Y. Jan. 14, 2011).

[5] Defendant moved pursuant to Rule 12(d) of the Federal Rules of Civil Procedure to treat this motion as one for summary judgment if the "Court can not resolve these issues by just referring to the pleadings[.]"  *See* Dkt. No. 7-7 at 24.  However, Defendant failed to submit a statement of material facts.  In light of this omission and the fact that it is not necessary to refer to information outside of the complaint to address this motion, the Court denies Defendant's request to treat its motion as one for summary judgment and will, instead, treat the pending motion as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of

the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is

entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).

Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief

above the speculative level," *see id.* at 555 (citation omitted), and present claims that are

"plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Iqbal*, 129 S. Ct. at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of "entitlement to relief."'"  *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct.

1955).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of

entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims

across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.


### 2. Free speech retaliation in violation of 29 U.S.C. § 411(a)(2)

Plaintiffs allege that they were vocal critics of the manner in which two officers within

CSEA Local 847 used the Local's resources for their own personal benefit and to the detriment

of its members.  *See* Complaint at ¶¶ 12-16.  Further, Plaintiffs Deborah Gray, Harold Gray and

Chevalier claim that they raised these same concerns with Defendant through Ms. Garrison, the

Region IV President, on at least six separate occasions.  *See id.* at ¶ 12.  Following this alleged

protected speech and after the arrest of one of CSEA Local 847's officers, an individual who was

the target of Plaintiffs' criticism, Plaintiffs assert that they were improperly disciplined for purported wrongdoing.  *See id.* at ¶¶ 33-43.  Plaintiffs claim that this discipline was merely a pretext to retaliate against them for their speech critical of Defendant's role in enabling the criminal activity.  *See id.*

Title I of the LMRDA is the "Bill of Rights of Members of Labor Organizations." Section 101(a)(2), entitled "Freedom of speech and assembly," provides that

> [e]very member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(2).  Further, a union may not "fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of [Title I]."  29 U.S.C. § 529.

The LMRDA creates a cause of action for a union member whose rights have allegedly been violated.  *See* 29 U.S.C. § 412.  The freedom of speech provision of the LMRDA applies to elected union officials and, as with all union members, protects them from retaliation for expressing their views on union matters.  *See Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 353-55 (1989); *Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am.*, 152 F.3d 178, 183 (2d Cir. 1998).

Consistent with the LMRDA's basic purpose of "'ensuring that unions [are]

-11-

democratically governed and responsive to the will of their memberships,'" *Lynn*, 488 U.S. at

352 (quotation and other citations omitted), a union member's right to free speech is broadly

construed, *see DeCarlo v. Salamone*, 977 F. Supp. 617, 622-23 (W.D.N.Y. 1997) (citing cases).

Thus, "criticism of union officers, even when it amounts to slander, is protected speech under the

LMRDA[.]" *Petramale v. Local No. 17 of Laborers Int'l Union of N. Am.*, 736 F.2d 13, 16 (2d

Cir. 1984).  Moreover, even if a union member faces legitimate, non-speech-related charges, he

may not be disciplined if those charges are intertwined with charges that violate his free speech

rights.  *See Schermerhorn v. Local 100, Transp. Workers Union of Am., AFL-CIO*, 91 F.3d 316,

324 (2d Cir. 1996) (citing *Petramale*, 736 F.2d at 16, 18).

       In the present matter, Plaintiffs have sufficiently pled a free speech retaliation cause of

action.  Defendant incorrectly asserts that Plaintiffs failed to "plead facts to tie the decision

makers as to that discipline to Raucci, DeSarbo or Garrison." *See* Dkt. No. 7-7 at 21.  Although

the judicial board made the disciplinary determination, Plaintiffs' allegations create questions of

fact about whether there was sufficient evidence to support a conviction, whether the hearing

was fair, and whether the hearing was brought at the insistence of Defendant to suppress

Plaintiffs' dissent.  *See Schermerhorn*, 91 F.3d at 324 (holding that "'a union official who aids

abets, instigates, or directs a wrongful use of union power to deprive a member of his rights

under § 101 may be held liable under § 102'" (quotation omitted)).  Moreover, even if Defendant

is correct that Plaintiffs did engage in minor infringements of union rules, dismissal is

inappropriate where there is a dispute concerning the motivation behind a retaliatory act

infringing on free speech. *See Kelly v. Huntington Union Free Sch. Dist.*, 675 F. Supp. 2d 283,

298 (E.D.N.Y. 2009) (citing *Sheppard v. Beerman*, 18 F.3d 147, 151 (2d Cir. 1994)); *see also*

*Schermerhorn*, 91 F.3d at 324 (holding that, even if a union member faces legitimate, non-speech-related charges, he may not be disciplined if those charges are intertwined with charges that violate his free speech rights (citation omitted)).  Further, Plaintiffs' allegation that the hearing was a "sham" creates an inference of improper motive for disciplining Plaintiffs; as do the allegations that Defendant's Constitution, rules or regulations did not forbid the practice of "grossing-up."  Finally, although Defendant asserts that it was the State Treasurer and State President who filed the disciplinary charges, the State Treasurer's affidavit also provides that Ms. DeSarbo and Local 847's then-Vice President Patrick Burns filed disciplinary charges against Plaintiff Deborah Gray in October and November of 2008.  *See* Dkt. No. 7-1 at ¶¶ 18-19.  It was Mr. Burn's complaint that prompted the audit of Local 847.  *See id.* at ¶ 22.

Moreover, "[w]hile the general rule is that status as a union employee or appointed officer is not a membership right within a union and is not protected by the LMRDA, . . . [the Second Circuit has] recognized an exception where the removal of a union officer was part of 'purposeful and deliberate attempt . . . to suppress dissent within the union. . . .'"  *Maddalone*, 152 F.3d at 184 (internal quotation, citations, and footnote omitted).  Here, Plaintiffs allege that, prior to the disciplinary hearing, they were removed from their positions in an attempt to suppress dissent.  *See* Complaint at ¶¶ 19-22, 27-30.  These allegations, if believed, establish that Plaintiffs were removed from their offices in an attempt to suppress their dissent.

Based on the foregoing, the Court denies Defendant's cross-motion to dismiss Plaintiffs' free speech retaliation claim.

### 3. Denial of equal rights and privileges of membership in violation of 29 U.S.C. § 411(a)(1)

-13-

Section 101(a)(1) of the LMRDA provides that

> [e]very member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

29 U.S.C. § 411(a)(1).  The Second Circuit has "read § 101(a)(1) to prohibit the *unequal* treatment of union members with respect to their voting rights.*"  Members For a Better Union v. Bevona*, 152 F.3d 58, 63 (2d Cir. 1998).  This section "is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote. And Congress carefully prescribed that even this right against discrimination is subject to reasonable rules and regulations by the union." *Id.* (quoting [*Calhoon v. Harvey*, 379 U.S. 134,] 139, 85 S. Ct. at 295).  "[U]nder *Calhoon*, 'voting rights protected by Section 101(a)(1) must be *directly* attacked to warrant suit[.]'" *Id.* (quoting *Navarro v. Gannon*, 385 F.2d 512, 520 (2d Cir. 1967)).

In *Bevona*, the Second Circuit noted that section 101(a)(1) does not provide any absolute voting rights to members; rather, the statute's statement granting union members "equal rights and privileges" to vote in union elections and referenda "curbs no abuse other than *discrimination* against some union members and in favor of others with respect to voting rights[.]" *Id.*  As such, to be viable, a claim under section 101(a)(1) must "allege the denial of some privilege or right to vote which the union has granted to others." *Id.* at 65.  Failure to allege the necessary discrimination in the grant of voting rights deprives a court of subject matter jurisdiction over the case. *See id.* at 65-66.

-14-

In the present matter, Plaintiffs alleged that Defendant discriminated against them in favor of those members who did not openly oppose Mr. Raucci and Ms. DeSarbo. *See* Complaint at ¶¶ 19-22, 27-30. Moreover, Defendant's conduct eventually led to removing Plaintiffs from office and depriving them of voting in union elections and other matters. These allegations are sufficient to support a claim pursuant to section 101(a)(1).

Based on the foregoing, the Court denies Defendant's motion to dismiss Plaintiffs' denial of equal rights and privileges of membership claim.

**4. Denial of the right to a basic fair hearing in violation of 29 U.S.C. § 411(a)(5)**

Defendant asserts that "Plaintiffs allege in a conclusory fashion that they had a 'sham hearing' but do not describe why it was improper except to claim that a CSEA staff attorney purportedly represented the witness at the hearing and the hearing panel." *See* Dkt. No. 7-7 at 22 (citing Complaint ¶ 39). Defendant claims that this allegation does not establish a sham hearing as a matter of law and that, therefore, the Court should dismiss this claim.

The LMRDA guarantees the right to a "full and fair hearing." 29 U.S.C. § 411(a)(5). Specifically, section 101(a)(5) provides that

> [n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5).

"The guarantee of a 'full and fair' disciplinary hearing does not require a union to provide the 'full panoply of procedural safeguards' necessary in a criminal case but only that the hearing

-15-

comport with the fundamental and traditional concepts of due process." *Marshall v. Am. Fed. of Gov't Emps., AFL-CIO*, 996 F. Supp. 1319, 1326-27 (W.D. Okla. 1997) (quoting *Tincher v. Piasecki*, 520 F.2d 851, 854 (7th Cir. 1975)); *see also Wildberger v. Am. Fed. of Gov't Emps., AFL-CIO*, 86 F.3d 1188, 1193 (D.C. Cir. 1996) (quotation omitted).  The LMRDA entitles the plaintiff to due notice of the charges against him, the production of some evidence at the hearing to support the charges, that the charges be supported by some evidence, an opportunity to confront and rebut the evidence, and an unbiased tribunal.  *See Vars v. Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers*, 320 F.2d 576, 578 (2d Cir. 1963) (holding that, "implicit in the requirement of a full and fair hearing is the requirement that there be some evidence to support the charges made"); *see also Tincher v. Piasecki*, 520 F.2d 851, 854 (7th Cir. 1975) (citations omitted).

The LMRDA imposes on a labor organization a duty to provide due process protections before the imposition of discipline, not a process to challenge it afterward.  *See* 29 U.S.C. § 411(a)(5); *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*, 156 F.3d 354, 360 (2d Cir. 1998) (citations omitted); *see also Collison v. Int'l Chem. Workers Union, Local 217*, 34 F.3d 233, 239 (4th Cir. 1994) (holding that a union's constitutional provision allowing for interim suspension of a member pending a later disciplinary hearing violates section 101(a)(5)).

Contrary to Defendant's assertions, Plaintiffs sufficiently allege a denial of the right to a basic fair hearing cause of action.  Specifically, Plaintiffs allege that they were disciplined for grossing-up their wages.  *See* Complaint at ¶¶ 35-39.  Plaintiffs claim, however, that Local 847's Executive Committee, the Special Budget Committee and Defendant had approved this method

-16-

for nearly ten years.  *See id.* at ¶ 38.  As such, Plaintiffs claim that the evidence was insufficient to support the charge on which they were disciplined.  *See Vars*, 320 F.2d at 578 (holding that "implicit in the requirement of a full and fair hearing is the requirement that there be some evidence to support the charges made" (citation omitted)).  Further, Plaintiffs' allegation that a CSEA attorney "advised" the Judicial Board while simultaneously representing Defendant's sole witness at the hearing created an impression of impropriety and bias.  Finally, Plaintiffs claim that, although they administratively appealed the Judicial Board's decision, Defendant expelled them without rendering a decision on the appeal.  *See id.* at ¶ 41.

Based on the foregoing, the Court denies Defendant's cross-motion to dismiss Plaintiffs' denial of the right to a basic fair hearing cause of action.

### 5. Violation of New York Labor Law § 215

Defendant claims that Plaintiffs fail to allege a violation of New York Labor Law § 215, which prohibits discriminatory action against an employee who complains about New York Labor Law violations to his employer.  *See* Dkt. No. 7-7 at 22.  Defendant claims that the statute has no relevance because Plaintiffs did not complain about any New York State Labor Law violations, and Plaintiffs were not even Defendant's employees.  *See id.*

Section 215 of New York's Labor Law prohibits discharging an employee for making a complaint about a violation of the Labor Law or participating in a proceeding relating to the Labor Law.  *See* N.Y. Labor Law § 215.  To establish a claim under section 215, a plaintiff "must show that she complained to [her employer] about its violations of the Labor Law and that she was terminated because of her complaints." *Jacques v. DiMarzio*, Inc., 200 F. Supp. 2d 151,

162 (E.D.N.Y. 2002).

Plaintiffs claim that Defendant violated section 198-b of New York's Labor Law and that they complained about this violation to Defendant.  New York's Labor Law section 198-b makes it

> unlawful for any person, either for that person or any other person, to request, demand, or receive, either before or after such employee is engaged, a return, donation or contribution of any part or all of said employee's wages, salary, supplements, or other thing of value, upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such employee from procuring or retaining employment.  Further, any person who directly or indirectly aids, requests or authorizes any other person to violate any of the provisions of this section shall be guilty of a violation of the provisions of this section.

N.Y Labor Law § 198-b(2).

To violate section 198-b, it is clear that the employer must request or demand that an employee return ("kick back") his wages.  Therefore, under Plaintiffs' theory, they must prove that they were terminated or disciplined for complaining to their employer about a violation of section 198-b.

Even assuming that Defendant – the parent union – was Plaintiffs' "employer" at one point in time under the statute, Plaintiffs have failed to set forth a claim for violation of section 215.  The Judicial Board's decision provided that, unless Plaintiffs repaid the money that they were improperly paid by "grossing-up" their salaries, they would be expelled from CSEA membership.  *See* Dkt. No. 7-4 at Exhibit "W," at 7-9.  Even if this decision could be considered a violation of New York Labor Law § 198-b, at the time of the Judicial Board hearing, Plaintiffs were no longer employed as officers of the local union.  Plaintiffs were removed from office prior to the disciplinary hearing and, therefore, were not "employees" when they "objected to"

-18-

Defendant's Labor Law violation, *i.e.*, the "kickback." *See* Complaint at ¶¶ 21, 27-30; Dkt. No. 5-7 at 15-16 (stating that Plaintiffs were removed from office upon Defendant instituting the Trusteeship); *see also Higueros v. N.Y.S. Catholic Health Plan, Inc.*, 526 F. Supp. 2d 342, 347 (E.D.N.Y. 2007) (holding that, "[i]n order to state a claim under New York Labor Law Section 215, a plaintiff must adequately plead that **while employed** by the defendant, he or she made a complaint about the employer's violation of New York Labor Law and was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result" (citations omitted) (emphasis added)).

Based on the foregoing, the Court grants Defendant's motion to dismiss Plaintiff's claim under the New York Labor Law.

**C.      Defendant's motion to dismiss Plaintiff's illegal trusteeship claim for lack of subject matter jurisdiction**

*1. Standard of review*

When a party moves to dismiss a claim pursuant to Rule 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted).  For purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true . . . ." *Id.* (internal citations omitted).  Both the movant and the pleader are permitted to use affidavits and other pleading materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).  "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable

to the party asserting it.'"  *Gunst v. Seaga*, No. 05 Civ. 2626, 2007 WL 1032265, *2 (S.D.N.Y.

Mar. 30, 2007) (quoting *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d

Cir. 1998)).  "Thus, the standard used to evaluate a Rule 12(b)(1) motion is similar to that used

for summary judgment under Fed. R. Civ. P. 56."  *Lopresti v. Merson*, No. 00 Civ. 4255, 2001

WL 1132051, *5 (S.D.N.Y. Sept. 21, 2001) (citing *Kamen* [*v. Am. Tel. & Tel. Co.*, 791 F.2d

1006,] 1011 [(2d Cir. 1986)]).


### 2. Imposition of illegal trusteeship in violation of 29 U.S.C. § 462

Defendant's only allegation regarding Plaintiffs' illegal trusteeship claim is that the Court

lacks subject matter jurisdiction because Local 847 and its subunits were composed entirely of

public employees.  *See* Dkt. No. 7-7.

As the Second Circuit has noted, section 464 of the LMRDA "clearly allows a parent

union to impose a trusteeship upon a local," but only if (1) "the parent's constitution provides for

it," and (2) "the purpose [for which it was created] is one of those enumerated in § 462."  *Int'l

Bhd. of Teamsters v. Local Union No. 810*, 19 F.3d 786, 790 (2d Cir. 1994) (citation omitted).  If

these conditions are met, the trusteeship is entitled to a presumption of validity for a period of

eighteen months from the date of its establishment.  *See id.*  The purposes for which a parent

union may impose a trusteeship include "[(1)] correcting corruption or financial malpractice,

[(2)] assuring the performance of collective bargaining agreements . . . , [(3)] restoring

democratic procedures, or [(4)] otherwise carrying out the legitimate objects of such labor

organization."  29 U.S.C. § 462 (1998).

Unlike Title I of the LMRDA, which was enacted to protected the individual members of

-20-

covered unions, "Title III's trusteeship provisions were intended to protect the trusteed local organization, not its individual members." *Reed v. Sturdivant*, 176 F.3d 1051, 1053 n.2 (8th Cir. 1999) (citing *Gesnik v. Grand Lodge, Int'l Ass'n of Machinists*, 831 F.2d 214, 216 (10th Cir. 1987)) (other citation omitted).

The courts that have addressed this issue have uniformly held "that Title III [does] not apply to a trusteeship imposed by a mixed national union on a local that represent[s] only government employees." *Id.* (citing cases); *see also Smith v. Office & Prof'l Emps. Int'l Union*, 821 F.2d 355, 356 (6th Cir. 1987) (citations omitted).  As such, the Court lacks subject matter jurisdiction if the trusteed local union is comprised solely of public employees.  *See id.*

Plaintiffs have failed to present any evidence that Local 847 or any of its subunits was a "mixed" union.  The evidence that they submitted merely established that Defendant, *i.e.*, the parent union, is a mixed union.  As such, the Court lacks subject matter jurisdiction over this claim because Local 847 is/was not a "labor organization" within the meaning of the LMRDA.

Based on the foregoing, the Court holds that it lacks subject matter jurisdiction over Plaintiffs' illegal trusteeship claim and, therefore, grants Defendant's motion to dismiss on this ground.


## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' motion for a preliminary injunction is **DENIED**; and the Court further

-21-

**ORDERS** that Defendant's motion to dismiss is **GRANTED in part** and **DENIED in part**,[6] and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Homer for all further pretrial proceedings.

**IT IS SO ORDERED.**

Dated: March 31, 2011
        Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[6] As a result of this Memorandum-Decision and Order, Plaintiffs may proceed with the following claims: (1) free speech retaliation in violation of 29 U.S.C. § 411(a)(2); (2) denial of equal rights and privileges of membership in violation of 29 U.S.C. § 411(a)(1); and (3) denial of the right to a basic fair hearing in violation of 29 U.S.C. § 411(a)(5).